Florence ESSER, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE OF COLORADO, Colorado Compensation Insurance Authority, and the Colorado Department of Corrections, Respondents,

and

Colorado Department of Labor and Employment, Division of Workers' Compensation; and Mary Ann Whiteside, in her official capacity as the Director of the Division of Workers' Compensation, Intervenors.

No. 99CA0106.

Colorado Court of Appeals, Div. II.

Jan. 20, 2000.

As Modified on Denial of Rehearing March 23, 2000.

Certiorari Granted Aug. 21, 2000.

Florence Esser, Pro Se.

No Appearance for Respondent the Industrial Claim Appeals Office.

Laurie A. Schoder, Denver, Colorado, for Respondents Colorado Compensation Insurance Authority and Colorado Department of Corrections.

Ken Salazar, Attorney General, Mark W. Gerganoff, Assistant Attorney General, Denver, Colorado, for Intervenors.

Opinion by Judge CRISWELL.*

Florence Esser, the claimant in this workers' compensation proceeding, seeks review of an order of the Industrial Claim Appeals Office (the Panel) that denied her mental impairment claim for worker's compensation benefits because she failed to present the live testimony of a physician or psychologist in support of that claim. We set the Panel's order aside and remand the cause for further consideration.

Claimant was 60 years old at the time of the events giving rise to her claim, and she had, throughout her lifetime, successfully held a number of responsible positions. In March 1990, she was employed by the Department of Corrections (DOC) as a corrections officer, and she had been promoted to sergeant before she allegedly became disabled.

Claimant testified that the responsibilities of a corrections officer, who supervises a number of prisoners, results in stress upon the person in that position. Commencing in late 1993, however, this stress became magnified because of a shortage of corrections officers. At that time, claimant was the control center officer, responsible for assuring

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, sec. 5(3), and § 24-51-1105, C.R.S.1999.

that all corrections officer positions in the Canon City Correctional Facility were filled. The shortage of officers made this responsibility difficult to fulfill, and as a result, claimant was required to work a full eight-hour shift, without any breaks at all, either to eat or to attend to her own needs.

In the fall of 1994, claimant noticed that her heart would begin racing on occasions, and she experienced numbness in her arms. Finally, on December 19, 1994, she experienced severe chest pains to the extent that she and her fellow employees thought she was suffering a heart attack. She was taken to a physician, who noted that her blood pressure was extraordinarily high, and she was transported by ambulance to a hospital.

Ultimately, while claimant was diagnosed as having a minor heart valve problem, it was determined that her chest pains and high blood pressure resulted from a "panic attack" precipitated by the stress placed upon her. It was recommended, therefore, that she not return to her job at the DOC, and she did not do so.

At the hearing on her claim before an Administrative Law Judge (ALJ), claimant testified to the above facts and supported her testimony by several documents that were received into evidence without objection.

Among the documents introduced was a letter from a doctor of osteopathy, who stated that he had been treating claimant since August 1994 because of "a particularly stressful situation which is employment related," and which had resulted in chest pains and difficulty in controlling her blood pressure. This physician recommended that, "due to the stress imposed on her in her present occupation," claimant should seek other employment.

Another document was a detailed report from a cardiologist, who concluded that, rather than having a physical heart problem of any consequence, claimant was suffering from an anxiety disorder and that her "main limitation is being in a stressful situation."

Finally, claimant introduced a report from a clinical psychologist, which confirmed that claimant was suffering from a "generalized anxiety disorder with panic attacks," al-though this report does not make it clear the extent to which the stresses of the job led to her impairment.

Although all of these reports were received as evidence, claimant did not call any of the individuals who prepared them, nor did DOC call any of them for cross-examination. Consequently, claimant presented no live expert testimony in support of her claim.

At the end of claimant's case, the DOC moved the ALJ to dismiss claimant's claim for her failure to present any live testimony from a physician or licensed psychologist as required by § 8–41–301(2)(a), C.R.S.1999, at it then existed. *See* Colo. Sess. Laws 1991, ch. 219, § 8–41–301(2)(a) at 1294. The ALJ granted the motion. In doing so, the ALJ acknowledged that the medical reports received into evidence tended to support the assertion that claimant's employment at DOC aggravated a pre-existing condition. Nevertheless, because there was no live testimony presented, the ALJ concluded that these reports were not sufficient to support her claim.

On review of the ALJ's order, the Panel concluded that § 8–41–301(2)(a) requires the presentation of live testimony from an expert to support a claim based upon mental stress. Accordingly, it affirmed the ALJ's decision, noting that it lacked authority to pass upon claimant's assertion that the statute violated the constitutional guarantee of equal protection.

## I.

We first reject claimant's assertion that the claim asserted by her is not subject to the strictures of § 8–41–301(2)(a).

At the time claimant terminated her employment, § 8–41–301(2)(a) provided, in pertinent part, as follows:

A claim for mental impairment must be proven by evidence supported by the testimony of a licensed physician or psychologist. For purposes of this subsection (2), 'mental impairment' means a disability arising from an accidental injury arising out of and in the course of employment when the accidental injury *involves no physical injury* and consists of a psycho-

logically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances. Colo. Sess. Laws 1991, ch. 219, § 8–41–301(2)(a) at 1294 (emphasis supplied).

■ Claimant argues that, because the stresses of her job led to chest pains and an elevated blood pressure, such physical symptoms constituted a "physical injury" under § 8–41–301(2)(a). We disagree.

In *Oberle v. Industrial Claim Appeals Office,* 919 P.2d 918 (Colo.App.1996), it was held that the "physical injury" referred to by the statute need not be one that results in a physical impairment or disability. Hence, the fact that the claimant there had suffered no permanent disability from a sexual assault did not mean that the mental trauma suffered as a result of that attack was not caused by a physical injury.

At the same time, however, the *Oberle* court agreed with the proposition that there is a difference "between cases in which physical injury causes mental impairment ('mental-physical') and those where impairment follows solely an emotional stimulus ('mental-mental')." *Oberle v. Industrial Claim Appeals Office, supra,* 919 P.2d at 920.

Here, there was no physical injury that precipitated claimant's chest pains and high blood pressure. They apparently resulted only from the mental stress placed upon her, as the reports she placed into evidence concluded. Thus, even if these conditions could reasonably be described as physical injuries, they were the results, not the causes, of the mental stimuli to which claimant was subjected.

We conclude, therefore, that claimant was required to meet the standard of proof established by former § 8–41–301(2)(a) to sustain her claim.

## II.

■ Claimant's primary assertion before us is the one that the Panel properly concluded that it could not pass upon, *i.e.,* that § 8–41–301(2)(a) denies a claimant equal protection of the laws by requiring a mental impairment claimant to present live expert "testimony" to support the claim, while allowing all other claimants to present such evidence by means of written reports. We agree with this assertion.

■ In an equal protection analysis, the level of judicial scrutiny varies according to the type of classification involved and the nature of the right affected. If a classification does not infringe upon a fundamental right and is not based on either a suspect classification or a classification requiring intermediate scrutiny, the rational basis standard of review is used. *Culver v. Ace Electric,* 971 P.2d 641 (Colo.1999).

Claimant's assertion here does not involve either a fundamental right or a suspect classification. Hence, the rational basis standard is to be applied. *See Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo. 1994).

■ Under this standard, the person challenging a statute must show that the classification arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated. Moreover, for purposes of such a review, a statute is presumed to be constitutional and the party challenging its validity bears the burden of convincing the court beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate legislative purpose. If any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume the existence of those facts. *Christie v. Coors Transportation Co.,* 933 P.2d 1330 (Colo.1997); *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707 (Colo. 1987).

The claimant here does not assert that there is no rational basis for requiring expert *evidence* to establish a mental impairment claim. Indeed, her argument recognizes that, because it may be much more difficult to determine the cause of these types of impairments than it is to determine the cause of a physical impairment, the General Assembly may properly require medical evidence to establish the claim. *See Tomsha v. City of*

*Colorado Springs,* 856 P.2d 13, 15 (Colo.App. 1992) ("requiring verification of the mental component of a stress claim by a physician or psychologist is rationally related to [the] purpose" of preventing frivolous and unnecessary claims). *See also Claimants in re Kohler v. Industrial Commission,* 671 P.2d 1002 (Colo.App.1983) (because heart attack may result from many non-employment causes, requiring proof of "unusual exertion" by such claimants does not violate equal protection).

There is, therefore, no assertion here that it is improper for the General Assembly to require expert "verification" of a mental impairment claim. The sole assertion is that requiring live "testimony" in such a case, while allowing all other claimants to produce expert evidence by the production of written medical reports, serves no rational purpose.

■ The question first presented is whether § 8–41–201(2)(a)'s requirement for "testimony" must be taken to refer only to live testimony or whether that requirement may be satisfied by some other form of evidence. We conclude that the pertinent term must be construed to refer only to live testimony or testimony presented by deposition.

The requirement in § 8–41–301(2)(a) itself distinguishes between "testimony" and other "evidence;" it says that a mental impairment must be proven "by *evidence* supported by . . . *testimony* . . . ." (emphasis added).

Likewise, § 8–43–210, C.R.S.1999, which is the statute describing the nature of evidence that may be received in a worker's compensation hearing draws a similar distinction. After first noting that, generally, only evidence admissible in "civil non-injury cases in the district courts" is admissible in such a hearing, § 8–43–210 provides that certain documents may be received as "evidence" and that: "Depositions may be substituted for *testimony* upon good cause shown." (emphasis added).

Both these statutes make clear, therefore, that, when the General Assembly used the term, "testimony," it was referring to the live testimony of a witness and not to some other form of "evidence."

This statutory distinction, then, becomes important because § 8–43–210 is specific in authorizing certain documents to be received as "evidence:"

"... medical and hospital reports, *physicians' reports,* vocational reports, and records of the employers are *admissible as evidence* and can be filed in the record without formal identification if relevant to any issue in the case." (emphasis added).

■ However, procedural due process requires that any opposing party must be given the opportunity to cross-examine the author of any report thus admitted. *See Puncec v. City and County of Denver,* 28 Colo.App. 542, 475 P.2d 359 (1970) (referee improperly relied upon hospital records without providing opportunity for inspection and cross-examination).

Presumably because of this statute, the ALJ here recognized that the reports offered by claimant were admissible, and he admitted them as evidence. Further, the ALJ did not dismiss claimant's claim because he concluded that the contents of those reports were not sufficient to support her claim. The sole basis for his dismissal was that no author of any report was called as a witness in claimant's case-in-chief.

We have attempted to discover some rational reason for requiring a mental impairment claimant to produce live testimony from his or her expert in every instance, even if the opposing party does not elect to cross-examine, while allowing all other claimants to submit expert reports as evidence and requiring that they produce the expert only if the opposing party seeks to cross-examine that expert. We have been unable to divine any rational basis for that distinction, and the respondents have suggested none.

■ The very real purpose of requiring proper verification of the claim is met once an appropriate expert report is received. And, in all cases in which the employer chooses to examine that expert, an opportunity for such examination must be provided, even if that expert is not initially called as a witness in the claimant's case. *See Puncec v. City and County of Denver, supra.*

Given these considerations, therefore, we conclude that the further requirement that a

mental impairment claimant produce a live witness in the first instance achieves no legitimate purpose, and to this extent only, the live testimony requirement of § 8–41–301(2)(a) results in an equal protection violation. *See Turner v. Lyon,* 189 Colo. 234, 539 P.2d 1241 (1975) (because statute regulating tenants' security deposits provides remedy for its violation, further penalty of loss of claim against tenant creates an arbitrary and unreasonable distinction between landlords requiring security deposits and those who do not).

The order of the Panel is set aside, and the cause is remanded to it with directions to require the ALJ to reconsider claimant's claim and to take such additional evidence upon the issues as the parties may elect to produce.

Judge MARQUEZ and Judge RULAND concur.