The **COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT, Division of Workers' Compensation; Mary Ann Whiteside, in her official capacity as the Director of the Division of Workers' Compensation; Colorado Compensation Insurance Authority; and the Colorado Department of Corrections, Petitioner,**

v.

**Florence ESSER and the Industrial Claim Appeals Office, Respondent.**

No. 00SC292.

Supreme Court of Colorado, En Banc.

June 4, 2001.

As Modified on Denial of Rehearing June 25, 2001.

Ken Salazar, Attorney General, Mark W. Gerganoff, Assistant Attorney General, Denver, CO, Attorneys for Petitioners The Colorado Department of Labor and Employment, Division of Workers' Compensation; Mary Ann Whiteside, in her Official Capacity as the Director of the Division of Workers' Compensation.

Eley & Eley, Craig C. Eley, Denver, CO, Attorney for Respondent Florence Esser.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to determine the meaning of the requirement of section 8–41–301(2)(a), 3 C.R.S. (2000), that any request for workers' compensation arising from a claim of mental impairment be "proven by evidence supported by the testimony of a licensed physician or psychologist." [1] The Administrative Law Judge (ALJ) and Industrial Claim Appeals Office (ICAO) ruled that, because the claimant did not present oral testimony, only reports and letters of a licensed physician or psychologist, her request

1. We granted certiorari on the following two issues: (1) "Whether the word 'testimony' within the meaning of section 8–41–301(2)(a), 3 C.R.S. (1999), is limited to live testimony of a licensed physician or psychologist"; and (2) "If section 8–41–301(2)(a), 3 C.R.S. (1999), is so limited, whether it denies workers' compensation mental impairment claimants equal protection under the law by requiring them to present live testimony of a licensed physician or psychologist in support of their claims while non-mental impairment claimants, pursuant to section 8–43–210, 3 C.R.S. (1999), may support their claims by means of written, unverified reports."

for workers' compensation benefits must be denied for failure to meet her burden of proof under section 8–41–301(2)(a). The court of appeals, finding that the section's requirement of oral testimony violated the claimant's constitutional equal protection rights, reversed the agency decision, and sent the case back to the ICAO with directions to require the ALJ to reconsider the claimant's claim. *Esser v. Indus. Claim Appeals Office*, 8 P.3d 1218, 1223 (Colo.App. 2000).

▉▉ We hold that section 8–41–301(2)(a) does not require a claimant to provide oral licensed physician or psychologist testimony. Written testimony suffices, subject, however, to the ability of any party on request to cross-examine at a hearing or deposition the professional who authored the written material the claimant presents. We therefore affirm the judgment of the court of appeals, remanding the case for further proceedings, but we do so on different grounds from that of the court of appeals. We hold that the statutory term "evidence supported by the testimony of a licensed physician or psychologist" in section 8–41–301(2)(a) encompasses written material authored by a licensed physician or psychologist, including written reports, statements, notes, or other documents relevant to the mental impairment claim. Accordingly, we do not reach the constitutional grounds the court of appeals addressed.

## I.

Claimant Florence Esser (Esser) worked as a corrections officer at the Cañon City Correctional Facility run by the Colorado Department of Corrections (DOC) from March 1, 1990 until December 19, 1994. During this time she was promoted to the position of sergeant, and was last working as a "control center officer." Beginning in 1993, the prison facility was short-staffed, and Esser was forced to work long hours, sometimes without the opportunity for a break. The situation worsened in the fall and winter of 1994.

During that same time, Esser began having what she thought were physical problems. Her heart raced, and she experienced numbness in one arm. On December 19, 1994, while working an evening shift, Esser became ill with what she feared was a heart attack, complaining of severe chest pains and numbness in both arms. She was taken to the Delta County Memorial Hospital. After finding Esser's blood pressure at an elevated 227/125, the Delta County Hospital staff sent her to St. Mary's Hospital in Grand Junction, where she stayed overnight. After seeing several different physicians and psychologists in the following months, Esser was diagnosed with numerous disorders including panic attacks, anxiety, depression, probable coronary artery disease, hyperlipidemia, situational stress, and post traumatic stress disorder. After consultation, her personal physician and other medical professionals told Esser that her job situation caused her stress and at least some of the related diseases. Her personal physician advised her to seek other employment.

Esser tendered her resignation on January 6, 1995. It became effective on January 15, 1995. Thereafter, Esser filed for social security benefits. In August 1996, the Social Security Administration determined that Esser had been totally disabled since December 19, 1994, and she began receiving benefits thereafter. In the fall of 1996, having received the final social security medical report, she filed a claim for short-term disability benefits with the State of Colorado's short-term disability insurance carrier, Standard Insurance Company. Pursuant to a letter dated January 7, 1997, Standard notified Esser of an award of short-term disability benefits to her, and a denial of long-term benefits. Esser subsequently requested a workers' compensation claim number from the Colorado Department of Labor and Employment, Division of Workers' Compensation, in order to pursue workers' compensation benefits for her mental impairment claim.

On September 9, 1998, the Colorado Division of Administrative Hearings held a hearing on Esser's workers' compensation claim. At the hearing, Esser testified and presented several written medical and psychological reports, notes, and other documents of Colorado licensed physicians and psychologists to

support her claim that her job as a corrections officer caused her mental impairment.[2] The hearing officer admitted these written materials into evidence without objection from the DOC. Esser presented no *oral* medical or psychological testimony at the hearing, nor did she submit a deposition, a form of oral testimony. At the close of Esser's evidence, the DOC moved to dismiss Esser's claim for failure to present the oral testimony of a licensed physician or psychologist, citing section 8–41–301(2)(a). The ALJ granted the motion to dismiss, thereby denying Esser's claim for benefits.

On appeal to the ICAO, that agency affirmed. *Esser v. Dep't of Corrs.*, W.C. 4–323–685 (Jan. 6, 1999). The ICAO, like the ALJ, found that section 8–41–301(2)(a) "requires that a claim for mental impairment be supported by the presentation of oral testimony from a licensed physician or psychologist," upholding the hearing officer's determination. The ICAO declined to address Esser's argument that the distinction between evidentiary requirements as between mental and physical claims violated her equal protection rights, stating that "we lack authority to consider [Esser's] constitutional challenge of the statute."

The court of appeals set aside the ICAO's order and remanded the case for further consideration. *Esser*, 8 P.3d at 1223. It held, first, that Esser's claim is subject to the requirements of section 8–41–301(2)(a), because her claim was for a mental impairment, not a physical one. *Id.* at 1221. Because this was the case, the court stated, Esser was required by section 8–41–301(2)(a) to present "live expert 'testimony' to support the claim." *Id.*

The court of appeals next addressed Esser's claim that section 8–41–301(2)(a)'s requirement of "live expert testimony" is unconstitutional. The court agreed with Esser, holding that the oral testimony requirement of section 8–41–301(2)(a) violated Esser's

equal protection rights because there was no rational basis for requiring oral testimony for mental impairment claims but not for physical claims. *See id.* at 1222–23.

We determine that section 8–41–301(2)(a) does not require a mental impairment claimant to present oral testimony of a licensed physician or psychologist at a hearing or deposition as a prerequisite to an award of benefits. Written testimony suffices. Thus, we need not determine whether the statute's requirements create an equal protection violation. We therefore affirm the holding of the court of appeals, but on different grounds.

## II.

We hold that the statutory term "evidence supported by the testimony of a licensed physician or psychologist" in section 8–41–301(2)(a) encompasses written material authored by a licensed physician or psychologist, including the licensed professional's written reports, statements, notes, or other documents relevant to the mental impairment claim.

### A.

### Standard of Review

▮▮▮ An ALJ's decision involving the application of facts to law on behalf of the agency is normally subject to review under an abuse of discretion standard. *See Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1255 (Colo.1998); *Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 856 (Colo.1993). Although we defer to the agency's determinations of fact, we review its conclusions of law de novo. *Vigil*, 856 P.2d at 856. We give considerable weight to an agency's interpretation of its own enabling statute, unless the agency's interpretation is not in accordance with the law.[3] *CF & I Steel, L.P. v. Pub. Utils. Comm'n*, 949 P.2d 577, 585 (Colo.1997).

---

2. In this appeal, we do not determine whether, had the ALJ accepted Esser's proposed evidence, she would be entitled to workers' compensation benefits. We only determine whether such written materials of licensed physicians or psychologists are to be *considered* by the ALJ as evidence supported by testimony on behalf of her claim.

3. The ICAO is an agency of the state created pursuant to Article IV, section 22, of the Colorado Constitution. *See O'Gorman v. Indus. Claim Appeals Office*, 839 P.2d 1149, 1152 (Colo.1992); *see also* § 8–1–102, 3 C.R.S. (2000).

Nevertheless, conclusions of law, including interpretations of the constitutions and statutes, are always subject to de novo review. *Fowler Irrevocable Trust 1992–1 v. City of Boulder,* 17 P.3d 797, 802 (Colo.2001).

■ The question before us is a matter of statutory construction, which is the traditional province of the courts. *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263, 1272 (Colo.2001). We commence our analysis presuming that a statutory provision is constitutional. *City of Greenwood Village v. Proposed City of Centennial,* 3 P.3d 427, 440 (Colo.2000). If alternative constructions of a statute—one constitutional, the other unconstitutional—may apply to the case under review, we choose the one that renders the statute constitutional or avoids the constitutional issue. *People v. Hickman,* 988 P.2d 628, 637 (Colo.1999).

### B.

### Evidence Supported by the Testimony of a Licensed Physician or Psychologist

■ Section 8–43–210 contains the basic evidentiary provisions applicable to workers' compensation claims in Colorado. It states, in pertinent part:

> [T]he Colorado rules of evidence and requirements of proof for civil nonjury cases in the district courts shall apply in all hearings; *except that medical and hospital records, physicians' reports, vocational reports, and records of the employer are admissible as evidence and can be filed in the record as evidence without formal identification* if relevant to any issue in the case. Depositions may be substituted for testimony upon good cause shown.

§ 8–43–210 (emphasis added). Under this section, even medical reports prepared by a consulting physician who has never examined the claimant are admissible into evidence at an administrative hearing. *Ackerman v. Hilton's Mech. Men, Inc.,* 914 P.2d 524, 526–27 (Colo.App.1996) (rejecting claimant's position that the General Assembly intended only to include "inherently trustworthy and reliable" medical reports instead of mere physicians' letters under the auspices of section 8–43–210, and holding that "physicians' re-

ports," which include "any letter authored by a physician which is relevant to a disputed issue in the case," can be admitted into evidence without formal identification); 17 Douglas R. Phillips & Susan D. Phillips, *Colorado Practice: Colorado Workers' Compensation Practice and Procedure* § 15.65, at 696–97, § 15.87, at 717 (1998).

Section 8–41–301 sets forth "conditions of recovery" for all workers' compensation claims. In regard to mental impairment claims, it states:

> (2)(a) *A claim of mental impairment must be proven by evidence supported by the testimony of a licensed physician or psychologist.* For purposes of this subsection (2), "mental impairment" means a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances.

§ 8–41–301(2)(a) (emphasis added).

The ICAO has interpreted this language to require a mental impairment claimant to produce oral evidence not required of other workers' compensation claimants. *See, e.g., Bruce v. Moffatt County Youth Care Ctr.,* W.C. 4–311–203 (Mar. 23, 1998) (stating that " 'testimony' is unambiguous, and . . . it connotes oral evidence given under oath"); *Frantz v. Arapahoe County Dep't of Soc. Servs.,* W.C. 4–306–780 (Sept. 8, 1997) (stating that every "claim for mental impairment must be supported by oral evidence from a licensed physician or psychologist testifying under oath"); *Burnham v. Kleinbub,* W.C. No. 4–226–336 (Aug. 15, 1996) (referring to the "special proof requirements of [section] 8–41–301(2)"). Similarly, the court of appeals has held that section 8–41–301(2)(a) requires a mental impairment claimant to produce additional evidence. *See, e.g., Oberle v. Indus. Claim Appeals Office,* 919 P.2d 918, 920 (Colo.App.1996) (stating that the General Assembly differentiated between mental and physical claims because "[c]ases in which the claimed disability is based on emotional or

psychological causes and in which physical injury is absent are less subject to direct proof and more susceptible to being frivolous in nature"). However, the *Oberle* court did not detail what section 8–41–301(2)(a) actually requires of a mental impairment claimant.

We have not had occasion to address the meaning of section 8–41–301(2)(a)'s requirements. We do so now, employing traditional rules of statutory construction.

■■■ We interpret a statute in order to give effect to the intent of the General Assembly whenever possible. *People v. Banks,* 9 P.3d 1125, 1127 (Colo.2000). To effectuate legislative intent, we first look to the plain and ordinary meaning of the words the General Assembly has chosen to utilize. *City & County of Denver v. Gonzales,* 17 P.3d 137, 140 (Colo.2001). We look also to the beneficent purposes of the statute, reading it as a whole and every word therein, in determining how to construe its terms harmoniously, if possible, and, if not, reconciling conflicts. *See Vail Assocs.,* 19 P.3d at 1273; *Mountain City Meat Co. v. Oqueda,* 919 P.2d 246, 252–53 (Colo.1996).

■■■ In construing the word "testimony", we look to the more encompassing word "evidence," also in section 8–41–301(2)(a). This section provides that a mental impairment claimant must produce evidence *"supported by"* testimony. The General Assembly's choice of wording is both broad and deliberate. Generally, "evidence" is *"[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact."* *Black's Law Dictionary* 576 (7th ed.1999) (emphasis added). It encompasses "'any species of proof legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, and the like.'" *Id.* (quoting 31A C.J.S. *Evidence* § 3, at 67–68 (1996)).

## C.
### Esser's Evidence

The physicians' and psychologists' reports, notes, and other documents that Esser presented in the proceedings[4] tend to prove the existence of a causal link between Esser's mental impairment and her workplace. These are within traditional understandings of what constitutes evidence.

■■■ The question, then, is how the word "testimony" functions in the statutory phrase we construe. Normally, "testimony" is "evidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." *Black's Law Dictionary* 1485 (7th ed.1999). However, we must also consider the forum in which the testimony is presented in determining whether the formalities of oral presentation under oath are, or are not, required. If the wording of a statute is ambiguous, we pursue alternative modes of statutory construction. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000). These include consideration of the legislative purpose, the object to be attained, and the consequences of a particular construction. *Id.*

■■■ Here, the word "testimony" is ambiguous in this administrative statute because this word may include or exclude written testimony, as an alternative to oral testimony under oath at a hearing or deposition. We thus proceed with our statutory construction analysis. When construing legislative intent, we consider legislative declarations of purpose. *City & County of Denver v. Bd. of Assessment Appeals,* 30 P.3d 177, 183 (Colo.2001); *Common Sense Alliance v. Davidson,* 995 P.2d 748, 755 (Colo. 2000) (stating that when divining legislative purpose, "[o]ne of the best guides ... is an act's declaration of policy"); *Nieto,* 993 P.2d at 502 (stating that "[l]egislative intent is the polestar of statutory construction"). When construing sections of the Workers' Compensation Act (the Act), §§ 8–40–101 to –47–209, 3 C.R.S. (2000), we bear in mind the express purpose for the Act's creation:

---

4. Rule 8 of the rules governing workers' compensation hearing procedure, 7 Colo.Code Regs. 1101–3, at 28 (1998), mandates that parties exchange "[m]edical and hospital reports, physicians' reports, vocational reports, and records of the employer" at least twenty days before an administrative hearing. There is no allegation that Esser did not satisfy this requirement.

It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" *be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation,* recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

§ 8–40–102(1), 3 C.R.S. (2000) (emphasis added); *see also Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 49 (Colo.2001). This declaration of purpose speaks directly about the General Assembly's intent.

■ The Act is intended to compensate injured workers, while controlling costs and minimizing claim delays. *Culver v. Ace Elec.,* 971 P.2d 641, 648 (Colo.1999). In selecting its statutory wording, the General Assembly did not require a mental impairment claimant to present "live" or "oral" or "verified" or "under oath" testimony of a licensed physician or psychologist. To add these words to the statutory provision would undermine the General Assembly's intent to provide a speedy, efficient, and timely presentation of facts to the agency decision-makers by claimants who may or may not be represented by counsel. Contrary to the legislative intent, such an interpretation would (1) increase the time and expense of delivering benefits; (2) complicate proceedings that may be uncontested in whole or in part; and (3) hinder the receipt of relevant evidence presented by claimants. *See Sunny Acres,* at 49.

■ The Act obviously includes relaxed evidentiary standards, *see* § 8–43–210, in pursuit of its purpose of cost-effective, timely delivery of workers' compensation benefits to claimants. What section 8–41–301(2)(a) requires is that a mental impairment claim be supported by the work product of a licensed physician or psychologist.

This may include letters, reports, affidavits, depositions, documents, and/or oral testimony.[5] No provision limits either "evidence" or "testimony" to oral presentation of the licensed professional under oath at a hearing or deposition. Rather, the intent of the provision is that an impairment claim must be supported by the licensed physician's or psychologist's own words, in addition to whatever other evidence the claimant presents on behalf of the claim. Procedural rules for workers' compensation hearings provide that it is "the intent of these rules that all lay, expert and medical testimony shall be presented at or before the hearing." 7 Colo. Code Regs. § 1101–3, at 21 (1998). The submission of written materials authored by a licensed physician or psychologist is within the letter and spirit of section 8–41–301(2)(a) and these administrative proceedings.

■ Petitioners, the Colorado Department of Labor and Employment, Division of Workers' Compensation, and Mary Ann Whiteside, Director of the Division of Worker's Compensation, urged us in their briefs and at oral argument *not* to construe section 8–41–301(2)(a)'s "heightened" evidentiary requirements as mandating *oral* witness testimony. They argued, however, that section 8–41–301(2)(a) requires a claimant to submit a "verified" report of such a professional. This construction, they contend, complies with their presumed legislative intent to require that written testimony of the licensed physician or psychologist must be given "under oath or affirmation." For the reasons stated above, we do not read these words or requirements into the wording the General Assembly chose. We do not presume that the General Assembly used language idly; rather, we give effect to the statute's words and terms. *Vail Assocs.,* 19 P.3d at 1273; *Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996).

■ We determine that Esser presented both "evidence" and "testimony" in the administrative proceeding to support her mental impairment claim; the agency wrongly denied benefits on the assumption that she

---

**5.** The agency determines the weight to assign to the various types of evidence. *Casa Bonita Rest. v. Indus. Comm'n of Colo.,* 624 P.2d 1340, 1341 (Colo.App.1981).

did not. She submitted reports, handwritten notations, and other documents authored by the licensed professionals. This occurrence was within the legislature's contemplation in not specifying that the supporting testimony of the licensed physician or psychologist must be oral testimony delivered under oath at a hearing or deposition, or that written testimony must be verified. *See, e.g., Lagae v. Lackner,* 996 P.2d 1281, 1284 (Colo.2000) (stating that the intent and purpose of the General Assembly overrides a literalist interpretation of a statute).

Reading the various procedural provisions of the statute harmoniously, and taking into account the nature of this administrative benefits program, *see United Airlines, Inc. v. Indus. Claim Appeals Office,* 993 P.2d 1152, 1157 (Colo.2000), we affirm the judgment of the court of appeals, on different grounds, and reverse the agency action. In light thereof, we set aside the court of appeals' determination of unconstitutionality.

We determine that the relaxed evidentiary standards of section 8–43–210 carry forward to section 8–41–301(2)(a). While section 8–41–301(2)(a) requires licensed physician or psychologist testimony, that testimony can assume a variety of forms and is not restricted to oral presentation of the licensed physician or psychologist. However, it is not sufficient for the claimant to paraphrase or testify to what the licensed professional said or did with respect to his or her condition. To be "testimony," within the meaning of section 8–41–301(2)(a), the words must be those of the licensed physician or psychologist. An opposing party may obtain an order compelling the licensed professional to appear for cross-examination at the hearing or at a deposition, pursuant to sections 8–43–207(1)(a), 8–43–207.5(2), 8–43–212, and 8–43–315, 3 C.R.S. (2000).

### III.

The ALJ and ICAO should have considered Esser's evidence prepared by the licensed professionals, in evaluating her mental impairment claim. Accordingly, we affirm the judgment of the court of appeals. We return this case to it for remand to the administrative agency to re-hear the claim, and for further proceedings consistent with this opinion.