COLORADO COURT OF APPEALS                                    **2016COA160**

Court of Appeals No. 14CA2409
Baca County District Court No. 11CV14
Honorable Douglas Tallman, Judge

Red Flower, Inc., a Kansas corporation,

Plaintiff-Appellant and Cross-Appellee,

v.

Kevin R. McKown,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Hawthorne and Román, JJ., concur

Announced November 3, 2016

Shinn, Steerman & Shinn, Donald L. Steerman, Lamar, Colorado, for Plaintiff-Appellant and Cross-Appellee

Brett R. Lilly, LLC, Brett R. Lilly, Wheat Ridge, Colorado, for Defendant-Appellee and Cross-Appellant

¶ 1    If a property owner fails to pay his or her property taxes, the county may sell a tax lien on the property to a third party. §§ 39-11-101 to -109, C.R.S. 2016.  After three years, and upon notice to the owner, occupant, and other interested parties, the holder of an unredeemed lien may obtain a treasurer's deed for the property.  § 39-11-120(1), C.R.S. 2016.

¶ 2    Plaintiff, Red Flower, Inc., bought tax liens on farmland owned by defendant, Kevin R. McKown.  After the redemption period expired, the Baca County Treasurer issued the tax deeds to Red Flower.  McKown subsequently challenged the validity of the deeds on the ground that the Treasurer had failed to provide notice to a tenant farmer who grew crops on the property.

¶ 3    The district court ruled that unlike owners and other interested parties — who are subject to a "diligent inquiry" standard of notification — the occupant is entitled to actual notice of the issuance of the treasurer's deed.  Because the tenant farmer had not received actual notice, the court voided the deeds.

¶ 4    We disagree with the district court's interpretation of the relevant statute, but we affirm, in part, on the alternative ground that, with respect to one of the deeds, Red Flower's publication

1

notice was deficient. With respect to the other deed, we remand to the district court to determine whether the Treasurer used diligent efforts to notify the tenant farmer of the issuance of the deed.

## I. Background

¶ 5    McKown owned 320 acres of farmland in rural Baca County. There were no structures, fencing, corner posts, or other improvements on the property. Access to the property is by "field roads"; the nearest county road is two miles away.

¶ 6    From 2004 until 2011, Don Lohrey farmed the property pursuant to an oral sharecrop agreement. He received the value from two-thirds of the harvest and McKown, as the owner, received the remaining one-third.

¶ 7    Lohrey lived approximately ten miles away from McKown's property, in Walsh, Colorado. During the winter months, Lohrey was present at McKown's farm about once every two weeks. During the growing season, he was on the property more frequently — about once a week. Lohrey had similar oral agreements with six other property owners, and he farmed a total of 5000 acres in the general vicinity.

¶ 8    Though McKown's agreement with Lohrey was not recorded with the county clerk and recorder's office, it was documented in a form required by the United States Department of Agriculture and kept on file at the Baca County Farm Service Agency.

¶ 9    After McKown failed to pay his county property taxes, the Treasurer sold tax liens for the real property and the mineral rights. Red Flower bought the tax lien certificates on November 15, 2007. In August 2010, a few months before the expiration of the redemption period, Red Flower applied for treasurer's deeds.  The Treasurer attempted to notify McKown, but her efforts were unsuccessful.  She published a series of notices in the newspaper in September 2010 and, in December 2010, she issued the deeds to Red Flower.

¶ 10   The following year, Red Flower filed a C.R.C.P. 105 action to quiet title in the property.  McKown appeared and defended on the ground that the tax deeds were invalid, based on insufficient notice to McKown and also to Lohrey, whom the parties stipulated had been in actual possession or occupancy of the property but had not received notice.

¶ 11    The district court found that the Treasurer had made a "diligent inquiry" to find the owner, McKown, as required by the statute, and it entered judgment for Red Flower. A division of this court affirmed that ruling, *Red Flower, Inc. v. McKown*, (Colo. App. No. 12CA2128, July 11, 2013) (not published pursuant to C.A.R. 35(f)) (*Red Flower I*), but remanded for a determination of whether the Treasurer had complied with the separate requirement to notify the occupant.

¶ 12    On remand, the district court considered the plain language of the statute, which requires that, prior to issuance of a tax deed, the county treasurer serve, by personal service or mail, notice "on [1] every person in actual possession or occupancy" of the property, "and also on [2] the person in whose name [the property] was taxed" if, "upon diligent inquiry, such person can be found in the county or if his residence outside the county is known," and on [3] "all persons having an interest or title of record in" the property if, "upon diligent inquiry, the residence of such persons can be determined." § 39-11-128(1)(a), C.R.S. 2016.

¶ 13    The court determined that the Treasurer's obligation to make "diligent inquiry" applied only to notification of owners and other

interested parties, but not to actual occupants. It reasoned that the absence of the qualifier "if, upon diligent inquiry," in the clause referring to occupants meant that the Treasurer was obligated to make all efforts necessary to notify the occupant. Indeed, according to the district court, there was no limit on the efforts required of the Treasurer to provide the occupant with notice of the issuance of the deed.

¶ 14    The court determined — presumably based on the parties' stipulation — that Lohrey qualified as a person in possession of the property. From there, it concluded that because the Treasurer had not complied with her statutory obligation to provide Lohrey with actual notice, the tax deeds were void.

¶ 15    On appeal, Red Flower argues that the district court's construction cannot be squared with the language or intent of the statutory scheme. McKown contends that the district court could have granted summary judgment in his favor for the additional reason that the Treasurer's publication notice was deficient and therefore the deeds were void.

¶ 16    Though we do not fully adopt Red Flower's reasoning, we agree that the district court's interpretation is incorrect. However, we

agree with McKown that, at least with respect to the real property deed, publication notice was deficient.

## II.    The Notice Requirement

¶ 17    Red Flower contends that the district court's interpretation of the notification requirement in section 39-11-128(1)(a) places an illogically high burden on the Treasurer to notify persons in "actual possession or occupancy" of the property.  It urges a reading of the statute that essentially adds a "diligent inquiry" element to the clause referring to actual possessors or occupants.  Though we disagree with Red Flower's reasoning, we conclude that section 39-11-128 does not require actual notice to any of the listed persons.

## A.    Standard of Review

¶ 18    We review de novo the district court's interpretation of a statute as well as its decision granting summary judgment.  *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006); *Collard v. Vista Paving Corp.*, 2012 COA 208, ¶ 16.

¶ 19    Red Flower asks us to temper our de novo review by deferring to the Treasurer's interpretation of the statute.  We acknowledge the general principle on which Red Flower relies — that courts

traditionally defer to an agency's interpretation of a statute it is entrusted to administer, *Hertz Corp. v. Indus. Claim Appeals Office*, 2012 COA 155, ¶ 12 — but we conclude that it is inapplicable here. Under this general principle, courts ordinarily defer to the state property tax administrator's interpretation of property tax statutes and the rules promulgated to implement those statutes. *See Aberdeen Inv'rs, Inc. v. Adams Cty. Bd. of Cty. Comm'rs*, 240 P.3d 398, 403 (Colo. App. 2009) (courts generally defer to the Board of Assessment Appeals' and the Property Tax Administrator's interpretations of tax statutes because "they are charged with administering the tax code"). But county treasurers are not the "agency" charged with administering the state tax code, and so we will not defer to the Treasurer's interpretation of her own obligations under section 39-11-128(1)(a). Moreover, because statutory construction is a question of law, we would not be bound by the agency's interpretation of the statute in any event. *Bd. of Cty. Comm'rs v. Colo. Pub. Utils. Comm'n*, 157 P.3d 1083, 1088 (Colo. 2007).

## B. Interpretation of Section 39-11-128(1)(a)

¶ 20    Our efforts to interpret a statute must always begin with the language of the statute itself. *People v. Cooper*, 27 P.3d 348, 354 (Colo. 2001). If the statutory language is unambiguous, we look no further and apply the words as written. *People v. Summers*, 208 P.3d 251, 254 (Colo. 2009). The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). The statutory scheme is read as a whole to give consistent, harmonious, and sensible effect to all of its parts, in accordance with the presumption that the legislature intended the entire statute to be effective. *Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 274 (Colo. App. 2007). We avoid constructions that are at odds with the legislative scheme or that lead to illogical or absurd results. *Id.*

¶ 21    The supreme court has construed section 39-11-128(1)(a)'s notice requirement in this way:

> With regard to notice, the General Assembly requires that several steps be taken. Prior to the issuance of a tax deed, the county

> treasurer must serve, by personal service or mail, notice "on every person in actual possession or occupancy" of the property. The treasurer must also serve notice "on the person in whose name [the property] was taxed," and on "all persons having an interest or title of record in" the property, if they can be located through "diligent inquiry."

*Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882, 889 (Colo. 2010) (alteration in original) (citations omitted).

¶ 22    There is no serious dispute that, as a matter of plain language, the "diligent inquiry" qualifier does not apply to notification of the actual possessor or occupant. Red Flower suggests that "and" might mean "or" in the provision, and that the "diligent inquiry" term modifies each clause of the provision, but neither argument is developed or persuasive.

¶ 23    We agree with the district court that the "diligent inquiry" standard does not apply to notice to actual possessors or occupants. The provision lists three categories of persons entitled to notice. The "diligent inquiry" qualifier is connected, spatially and grammatically, to only two of those categories. Generally, qualifying or modifying words and phrases refer to the word, phrase, or clause with which they are grammatically connected. Moreover, where

qualifying words are in the middle of a sentence, and apply to a particular branch of it, they are not to be extended to that which precedes or follows. *See* 73 Am. Jur. 2d, *Statutes* § 128 (2d ed. 2015). In addition, the provision uses the singular "person" to signify that the qualifier applies only to the preceding category or persons: "The treasurer shall serve . . . a notice . . . on every person in actual possession or occupancy of [the property] . . . and also on the person in whose name [the property] was taxed . . . if, upon diligent inquiry, such *person* can be found in the county . . . ." § 39-11-128(1)(a) (emphasis added). If the "diligent inquiry" qualifier covered the preceding reference to an actual occupant, the next clause would refer to "persons" — both the occupant and the person in whose name the property was taxed.

¶ 24 The harder issue though, and where the views diverge, is in discerning the effect of the omission of the "diligent inquiry" qualifier with respect to actual possessors or occupants. The district court concluded, though it questioned the rationale, that the effect was a requirement that the Treasurer use whatever inquiry is necessary — potentially beyond diligent and into extraordinary — to notify the actual occupant of the issuance of the

10

deed. Red Flower counters that this effect is so illogical that it would be better to ignore the plain language and to imply the addition of the "diligent inquiry" qualifier to all actual possessors and occupiers.

¶ 25     We find both alternatives unsupportable. Red Flower's proposal requires us to rewrite the statute, treating the omission of the "diligent inquiry" qualifier as a legislative error that we can remedy through judicial interpretation. But in interpreting a statute, we must "accept the General Assembly's choice of language and not add or imply words that simply are not there." *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009); *see also Dep't of Labor & Emp't v. Esser*, 30 P.3d 189, 196 (Colo. 2001) ("We do not presume that the General Assembly used language idly; rather, we give effect to the statute's words and terms.").

¶ 26     On the other hand, we decline to adopt the district court's construction because it is inconsistent with the overall statutory scheme and leads to absurd results. We start by noting that "the notice requirement has long been understood to primarily protect the interests of owners of record." *Lake Canal*, 227 P.3d at 890; *see also Mitchell v. Espinosa*, 125 Colo. 267, 272, 243 P.2d 412, 414

11

(1952) ("The only purpose of the law in requiring the publication of notice . . . is to protect the interest of the fee-title owner and afford him an opportunity for redemption . . . ."). It is indeed incongruous, as Red Flower points out, that the occupant of the property would be entitled to demand that the county treasurer make extraordinary efforts to notify him or her when the owner is entitled only to reasonable efforts. We do not mean to suggest that service on the occupant is a mere "technicality," as Red Flower insists, *see Meyer v. Haskett*, 251 P.3d 1287, 1291 (Colo. App. 2010) (in the absence of "full compliance" with notification requirements, treasurer's deed is subject to invalidation), but, if the legislature had intended to require a heightened notification standard for one category of people under section 39-11-128(1)(a), it is unlikely that it would have chosen occupants over owners.

¶ 27    We are confident, though, that the legislature did not intend to create a heightened standard for *any* category of persons entitled to notice under the statute. A division of this court has previously noted the "unbroken line of Colorado cases" interpreting section 39-11-128 to require no more than those efforts that comport with minimum due process standards. *Schmidt v. Langel*, 874 P.2d 447,

12

451 (Colo. App. 1993). Indeed, as the court observed in *Schmidt*, the adoption of more expansive standards of diligence would "provide little guidance as to when the inquiry must cease and little assurance that the efforts required would be fruitful or within the limits of practicality." *Id.* These concerns are highlighted here: the district court's construction of the statute requires a potentially never-ending inquiry that could easily exceed the limits of practicality for county treasurers.

¶ 28    McKown contends that the district court's interpretation is compelled by *Taylor v. Lutin*, 106 Colo. 170, 102 P.2d 484 (1940), but we are not convinced. In *Taylor*, the issue presented was whether the lessee of the property owner qualified as an occupant entitled to notice. When the treasurer's sole attempt to serve the lessee failed, she argued he was not an occupant under the statute. But at a trial to determine the validity of the deed, the treasurer conceded that the lessee "had the occupancy of the land," a concession the court deemed generally dispositive of the issue. *Id.* at 173, 102 P.2d at 485. *Taylor* did not address the efforts required of a treasurer in notifying an occupant of a tax sale or issuance of a

deed, and we therefore do not read the case to establish a requirement of actual notice.

¶ 29    Accordingly, we must reject the district court's interpretation of the statute to require nothing short of actual notice — no matter the efforts necessary — to the actual possessor or occupant.

¶ 30    Instead, in our view a harmonious reading of the provision's language establishes that the "diligent inquiry" qualifier was omitted from the occupant clause because the statute contemplates that a person "in actual possession or occupancy" of the property will be found on the property, obviating the need for any inquiry as to the person's whereabouts.

¶ 31    The statute does not define the term "actual possession or occupancy." § 39-11-128(1)(a).  The addition of the word "actual" suggests that the legislature intended a narrower meaning than the word "possession" or "occupancy" would have on its own.  *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo. 2004) (in construing statutes, courts must give effect to every word).  In the absence of a statutory definition, we may refer to a dictionary definition to determine the meaning of a word or phrase.  *City of Arvada v. Colo. Intergovernmental Risk Sharing Agency*, 988 P.2d 184, 187 (Colo.

App. 1999) (ruling that it was appropriate for district court to look to Black's Law Dictionary to determine definition of legal term), *aff'd*, 19 P.3d 10 (Colo. 2001).

¶ 32     Black's Law Dictionary defines "actual possession" as "[p]hysical occupancy or control over property," as distinguished from "constructive" possession, meaning "[c]ontrol or dominion over a property without actual possession," or possession that is "[l]egally imputed; existing by virtue of legal fiction though not existing in fact." Black's Law Dictionary 380, 1351 (10th ed. 2014). The term "occupancy" is defined as "[t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, esp. of a dwelling or land." *Id.* at 1247.

¶ 33     *Brown v. Davis*, 103 Colo. 110, 83 P.2d 326 (1938), is instructive on this point. In *Brown,* the purchaser of the tax deed failed to notify the occupant of the property, but argued that, because the owner had been served and the owner was *legally* in possession of the property, notice to the actual occupant was unnecessary. The supreme court disagreed, explaining that "the status of the property as to its actual physical occupancy, as

15

distinguished from the constructive possession thereof, to a major degree controls the procedure with reference to the required notice." *Id.* at 113, 83 P.2d at 327.  Where the property is "actually *occupied*," the court instructed,

> the statute clearly contemplates . . . that service of notice not only must be made upon the [owner], if he can be found in the county, and upon those having an interest in or title of record to the premises when their residence can be learned, but also upon the person in the actual possession or occupancy of the premises.

*Id.* at 113, 83 P.2d at 327-28.

¶ 34     It makes sense, then, that the statute would not require the county treasurer to make a "diligent inquiry" to find a person who is physically possessing or occupying the premises.  "No such provision [the "diligent inquiry" requirement] is made with respect to occupants of the property [because they] presumably may be found at the property." *In re Application for Tax Deed*, 675 N.E.2d 285, 286 (Ill. App. Ct. 1997).[1]

---

[1] The Colorado and Illinois statutes are identical in all relevant respects, the Colorado statute having originally been adopted from the Illinois law.  *Brown v. Davis*, 103 Colo. 110, 114, 83 P.2d 326, 328 (1938).  Under 35 Ill. Comp. Stat. 200/22-15 (2016), notice shall be served "upon owners who reside on any part of the property

¶ 35    The district court was therefore correct in concluding that the "diligent inquiry" standard does not apply to notification of actual possessors or occupants, but it erred in determining that some limitless duty to find and notify the occupants applied instead. Rather, when the premises are actually occupied, the county treasurer may serve notice on the occupants *at the property*.

¶ 36    The wrinkle in this case is that the parties appear to have stipulated, and the district court found, that Lohrey — who neither lives on the property nor can be found there on more than an occasional basis — was an actual occupant.[2]  It is undisputed that

---

sold by leaving a copy of the notice with those owners personally," and "upon all other owners and parties interested in the property, if upon diligent inquiry they can be found in the county, and upon the occupants of the property."

[2] The district court referred to Lohrey as a "tenant," and the parties sometimes refer to him as a "tenant farmer."  The record, however, is not clear as to Lohrey's precise legal status.  Lohrey testified that he had a verbal sharecrop arrangement with McKown that began in 2004 and continued without formal renewal until about the time Lohrey retired from farming in 2012.  Under the terms of the arrangement, Lohrey farmed the land, paid two-thirds of the expenses and took two-thirds of the crops, while McKown paid one-third of the expenses and took one-third of the crops.  A tenant typically has a right of exclusive possession of the property whereas, in a sharecropper arrangement, the owner retains the right to enter and occupy the land subject only to the rights of the sharecropper with respect to the crops.  *Hampton v. Struve*, 70 N.W.2d 74, 79 (Neb. 1955); *see also Burton v. Miller*, 86 Colo. 166,

Lohrey lived nearly ten miles away from the property, he visited McKown's field somewhere between once every two weeks and once a week for the limited purpose of checking on his crops, and his right to enter on the property derived exclusively from a verbal sharecropper arrangement with McKown.

¶ 37     Still, we will assume, though we decline to decide that the statute readily contemplates it, that there could be a category of occupants who do not in fact occupy the premises; in other words, persons, like Lohrey and like many owners and others with an interest in the property, who must be found before they can be served with notice.

¶ 38     But whenever the person entitled to notification is not on the premises, section 39-11-128(1)(a) requires the county treasurer to make only a "diligent inquiry" to determine the person's whereabouts and then to notify him of the sale. *See Milroy v. McFerran*, 270 P.2d 329, 331 (Okla. 1954) (holding that statute did

---

168, 279 P. 51 (1929) (sharecropper is not a tenant); *Warner v. Hoisington*, 42 Vt. 94, 96-97 (1869) (sharecropper arrangement "does not amount to a lease of the land"). The distinction might be relevant as to whether Lohrey qualifies as an actual possessor or occupant of the property, but we need not decide that issue because, as we have noted, the parties stipulated that Lohrey was an occupant for purposes of section 39-11-128(1)(a), C.R.S. 2016.

18

not include "diligent inquiry" qualifier for notice to occupant but, where occupant was tenant farmer who lived on adjoining property, "diligent inquiry" standard applied); *cf. Dohrn v. Mooring Tax Asset Grp., L.L.C.*, 743 N.W.2d 857, 861 (Iowa 2008) (stating that statute did not include "diligent inquiry" standard but, where occupant was not on premises and had to be located to be served, a reasonable efforts standard might apply).

¶ 39    The statute contemplates three categories of persons entitled to notice, who fall into two broad classifications: (1) persons who can be found on the property (ordinarily, actual possessors and occupants and, often, owners) and (2) persons likely to be found off the property (sometimes owners and, often, other persons with an interest in the property).  Those are the classifications that matter for purposes of determining the county treasurer's burden.  If the person is on the property, the statute presumes no real burden on the treasurer to locate the person.  If the person is off the property, the statute requires the treasurer to make a "diligent inquiry" to find the person.

¶ 40    But under no circumstances is the treasurer held to a higher standard than the use of efforts reasonably calculated to effectuate

19

notice. *See Jones v. Flowers*, 547 U.S. 220, 229 (2006); *see also Schmidt*, 874 P.2d at 451 ("[E]xtraordinary efforts at locating an address are not demanded by principles of due process."); *cf. Klingsheim v. Cordell*, 2016 CO 18, ¶ 20 ("[T]he purpose of section 39-11-128(1) is to forbid the issuance of a treasurer's deed absent reasonably diligent efforts to notify persons with an interest in the property, especially those with a right to redeem.").

¶ 41    Here, the parties tell us that Lohrey was an occupant who was found off the property — a curious designation, but one we accept for purposes of our decision. In that case, he was entitled to have the Treasurer make "diligent inquiry" to locate and serve him with notice of the issuance of the deed.

¶ 42    Our conclusion is supported by another provision of the statute. *See People v. Yoder*, 2016 COA 50, ¶ 17 (We "look at the statute as a whole in order to interpret the meaning and purpose of its language."). Under subsection 128(1)(b), when the value of the property exceeds $500, the Treasurer is required to publish notice of the issuance of the tax deed. A copy of such notice must be sent to "each person not found to be served whose address is known or can be determined upon diligent inquiry." § 39-11-128(1)(b).

¶ 43    This provision confirms that any person who must be "found"

off the property in order to be notified by mail of the issuance of the

deed is entitled to have the Treasurer make a "diligent inquiry" to

determine his or her whereabouts. At the same time, the provision

makes clear that there is no category of persons who must be

"found" for notification purposes entitled to actual notice.

¶ 44    The district court determined that McKown was entitled to

demand that the Treasurer go to any lengths necessary to locate

and serve Lohrey. Using that standard, the district court

determined that Lohrey did not have actual notice of the transfer of

the deeds and entered summary judgment for McKown. We

conclude that the court applied the wrong standard.

¶ 45    Red Flower opposes a remand, arguing that, as a matter of

law, the Treasurer made a "diligent inquiry" to determine Lohrey's

whereabouts. In our view, whether efforts amount to a "diligent

inquiry" and were reasonably calculated to effectuate notice

depends on the circumstances of each case. *Cf. Sandstrom v. Solen*,

2016 COA 29, ¶ 22 ("'Diligent' means a 'steady, earnest, attentive,

and energetic application and effort in a pursuit' . . . ." (quoting

*Schmidt*, 874 P.2d at 450)).  Therefore, we determine that a remand is necessary.

¶ 46     However, we need not remand with respect to both deeds.  The real property deed, unlike the mineral deed, could not be issued until the Treasurer published notice of its impending issuance. McKown contends that the publication notice was deficient and, for the reasons discussed below, we agree.  Therefore, we affirm the district court's entry of summary judgment in favor of McKown on the real property deed on this alternative basis.  *See Colo. Pool Sys., Inc. v. Scottsdale Ins. Co.*, 2012 COA 178, ¶ 71 (we may affirm summary judgment for any reason supported by the record, even reasons not decided by the trial court) (*cert. granted in part* Sept. 3, 2013).  We remand, therefore, only with respect to the mineral deed.

C.   Interpretation of Section 39-11-128(1)(b)

¶ 47     In all cases where the assessed value of the property is $500 or more, the Treasurer must publish notice of the issuance of the deed in the following manner: "three times, at intervals of one week, . . . not more than five months nor less than three months before the time at which the tax deed may issue." § 39-11-128(1)(b).

¶ 48    According to the Treasurer's testimony, she published the first notice in the newspaper on September 2, 2010, and the third and final notice on September 16, 2010.  (She did not provide the date of the second notice.)  The tax deed issued to Red Flower on December 8, 2010 — less than three months after the last notice.

¶ 49    Red Flower reads the provision to require that only the first notice be published three months before issuance of the deed.  But we cannot square that construction with the plain language of the statute.

¶ 50    In our view, the provision creates a window within which the notices must be published: sometime between five and three months before the deed is issued, the Treasurer must publish three notices, once each week.  Our reading gives full effect to all of the words in the provision, *see Bd. of Cty. Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1273 (Colo. 2001) (we construe statutory provision as a whole, giving effect to every word and term, whenever possible), while Red Flower's interpretation disregards the "three times" language.

¶ 51    Accordingly, we conclude that the Treasurer's publication notice was statutorily deficient.[3]

¶ 52    McKown argues that the deficient notice renders the deed void. Though we disagree that the deed is void, we determine that it is voidable and, therefore, the court properly set it aside.

¶ 53    A deed is *void* when the taxing entity had no jurisdiction or authority to issue it. *Lake Canal*, 227 P.3d at 886. By contrast, a deed is *voidable* when the county treasurer's notice is statutorily insufficient. *Id.* at 887. As the supreme court explained,

---

[3] Red Flower contends that the sufficiency of the publication notice was resolved in its favor in *Red Flower I* and that we are bound by the prior division's determination under the law of the case doctrine. True enough, the prior division concluded, "the undisputed facts show that the county treasurer fulfilled [subsection (1)(b)'s] requirements by publishing the notice for three weeks in a Baca County newspaper in September 2010, four months before the deed to the real property was issued in December." No. 12CA2128, slip op. at 5 (footnote omitted). But as the division had just noted, the issue was not raised by McKown; rather, he argued that the Treasurer failed to comply with subsection (1)(a) by not making a diligent effort to discover his address. Consequently, the division's observations about the Treasurer's compliance with subsection (1)(b) were not necessary to its ruling and were dicta. In general, dictum does not become law of the case. *Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009). But even if we construe the prior division's determination as law of the case, we may decline to apply the doctrine if we discern a factual error. Here, Red Flower itself concedes that notice was not published four months before the deeds issued.

24

inadequate notice does not implicate jurisdiction or authority, but rather "the manner in which the authority was exercised." *Id.* at 889.

¶ 54     We are not persuaded by McKown's argument that *Gomer v. Chaffee*, 6 Colo. 314 (1882), compels a different conclusion.  In *Gomer*, the treasurer sold the tax lien on April 17th, in violation of the statute that authorized the sale of tax liens only after April 20th of each year.  *Id.* at 316.  Because the treasurer's authority to sell tax liens is purely statutory, he had no power to sell the liens prior to the date authorized by statute.  *Id.* at 315.

¶ 55     Here, if the Treasurer had issued the deeds before the expiration of the redemption period, we would be presented with an analogous issue.  But the statutory redemption period ended on November 15, 2010, and the Treasurer had the power to issue the deed at any time thereafter.  The defect in this case was procedural, not jurisdictional.  *See Sandstrom,* ¶ 24 (insufficient notice is a procedural defect that renders tax deed voidable, not void).

¶ 56     Still, the point of publication notice is to encourage redemption and protect the owner's interest in his or her property, *see Lake Canal,* 227 P.3d at 890, and, as we noted earlier, it is no

25

mere technicality. The taxpayer is entitled to redeem until the end of the redemption period or three months after the last publication notice, whichever comes later. *See* § 39-11-128(1)(a) (Notice must state "when the time of redemption will expire or when the tax deed shall be issued."). The Treasurer did not publish the last notice until September 16, 2010; thus, McKown should have had until December 16, 2010, to redeem the lien.

¶ 57  A voidable deed may be set aside so long as the claim to recover property is brought within five years after the issuance of the deed. *Sandstrom*, ¶ 30. Here, McKown's counterclaim was filed well within the statute of limitations.

¶ 58  The district court voided the tax deed for a different reason, but we may affirm its decision on an alternative ground supported by the record. *Id.* Because the Treasurer failed to comply with section 39-11-128(1)(b), the district court properly set aside the real property deed.

### III.    Conclusion

¶ 59  The district court's entry of summary judgment in favor of McKown is affirmed in part, reversed in part, and remanded for further proceedings. On remand, the district court should

26

determine, with respect to the mineral deed only, whether the Treasurer used diligent efforts to notify Lohrey of the issuance of the deed.

JUDGE HAWTHORNE and JUDGE ROMÁN concur.